**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 2:09-cr-00443-KJD-LRL |
| v. ) | |
| ) | SUPPLEMENTAL MOTION TO SUPPRESS |
| DAVID M. PERELMAN, ) | PRIVILEGED STATEMENTS (#28) |
| ) | |
| Defendant. ) | |
| ) | |

## REPORT & RECOMMENDATION

The defendant, David M. Perelman, is under indictment on one count of Theft of Government Property in violation of 18 U.S.C. § 641 and one count of Unauthorized Wearing of a Purple Heart in violation of 18 U.S.C. § 704(a) and (d). The matter before the court is Perelman's Supplemental Motion to Suppress Privileged Statements (#28), in which he contends that statements made between him and his union steward, as well as a letter allegedly provided to the union steward, should be suppressed as privileged. Also under submission is the government's Opposition (#30), and defendant's Reply (#31). Arguments were heard on this issue at an evidentiary hearing held on defendant's Motion to Suppress Involuntary Statements (#18) in this case on March 1, 2010. Having considered the motion, opposition, reply, and arguments, the court submits this Report and Recommendation.

**THE EVIDENCE**

Based on the testimony adduced at the evidentiary hearing and the exhibits attached to the parties' papers, the court finds the following facts have been established by a preponderance of the evidence. At approximately 9:00 a.m. on July 10, 2009, Special Agent Gregory Fitzgerald of the Department of Veteran Affairs Office of the Inspector General (VAOIG), phoned Perelman at his place

of employment, the VA's Northwest Clinic. Perelman had been employed as a clerk with the VA Southern Nevada Healthcare System for approximately three years. SA Fitzgerald identified himself as a special agent with the VAOIG and told Perelman he was conducting an investigation and wished to speak with him. Perelman agreed to meet with SA Fitzgerald at 10 a.m. for an interview at Fitzgerald's office in the East Clinic.

Concerned about the interview, Perelman spoke to his union steward, Gregory Blackburn, in Blackburn's office. Blackburn had previously represented Perelman in a union matter. At the hearing Blackburn testified that Perelman, who seemed anxious, asked him to be his representative during an upcoming interview with an agent of the VAOIG. Blackburn called the agent, who was later identified as SA Fitzgerald, and asked him what he wanted to speak to Perelman about. Blackburn specifically inquired whether it was in connection with a criminal matter. The agent told Blackburn that it was. Blackburn testified that he "thanked him and I hung up the phone and then I turned to Mr. Perelman and I told him I can't help you because it's a criminal investigation." Blackburn explained further on cross examination, "I dismissed the union portion of our conversation at the time the gentleman told me it was a criminal investigation. I said our union vice president will not allow us to get involved in criminal investigations, so at that time I pretty much terminated the conversation as union steward, but I did give him advice." Specifically, Blackburn told Perelman, "if he got there and felt uncomfortable, he should thank them and walk out. I said that's what I would do." Though Blackburn's office door was open, the conversation was described as "private." Perelman left Blackburn's office and drove himself to the interview with the VAOIG. Two or three days later, Blackburn and Perelman spoke again, and Blackburn advised Perelman that he should hire a lawyer. Also at that time Perelman allegedly gave Blackburn a copy of a letter regarding his Purple Heart.

**DISCUSSION**

Federal Rule of Evidence 501 provides that "privileges shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." Rule 501 is not intended to "freeze the law of privileges." *Trammel v. United States*, 445

1   U.S. 40, 47 (1980).  Rather, the rule acknowledges the authority of the federal courts to continue "to
2   develop rules of privilege on a case-by-case basis." *Trammel*, 445 U.S. at 47 (citation and quotations
3   omitted).  In *Jaffee v. Redmond*, 518 U.S. 1, 10-15 (1996), the Supreme Court provided guidance for
4   lower courts in determining whether to establish a new privilege under Rule 501, instructing that courts
5   consider whether the privilege is "rooted in the imperative need for confidence and trust," 518 U.S. at
6   10 (internal quotation marks omitted), whether the privilege would "serve public ends," *id.* at 11
7   (internal quotation marks and alteration omitted), what evidentiary benefit would arise from denying
8   the privilege, *id.* at 11-12, and the States' rules on the subject, *id.* at 12-15.

9   While declining to recognize a union member-union official privilege, the court in *In re Grand
10  Jury Subpoenas dated January 20* explained that four criteria are generally relevant in recognizing a
11  new privilege: (1) the communication at issue must be made in confidence, (2) confidentiality must be
12  essential to the maintenance of a full and satisfactory relationship between the parties, (3) the parties'
13  relationship must be one that the community has decided ought to be sedulously fostered, and (4) the
14  injury that would inure to the relationship by the disclosure of the communication must plainly
15  outweigh the important societal interest in obtaining all the evidence necessary to ensure the correct
16  disposal of litigation.  *In re Grand Jury Subpoenas dated January 20, 1998*, 995 F. Supp. 332, 334
17  (E.D.N.Y. 1998) (citing 8 J. Wigmore, Evidence § 2285 (McNaughton Rev. 1961).  "It is the party
18  seeking an exception from this principle that bears the burden of establishing the existence of a privilege
19  and its applicability to a particular case." *In re Grand Jury Subpoenas*, 995 F. Supp. at 334.

20  Defendant fails to meet his burden of establishing applicability of such a privilege in this
21  particular case.  First, he fails to adequately justify why a union privilege should be created and applied
22  in the context of this criminal matter, in which no union related issue is implicated.  Neither Perelman's
23  employment with the VA nor his membership in a union has anything to do with this case.  Blackburn's
24  clear dismissal of his role as Perelman's union steward upon learning that SA Fitzgerald was
25  investigating a criminal matter only underscores this point; no vital interest of the union was implicated
26  by the criminal investigation being conducted by the VAOIG.

Second, the conversation for which the defendant seeks the protection of a privilege did not occur between a union member and a union official discussing union related business. Blackburn's express dismissal of the "union portion" of the conversation took both men's statements outside of the union context. The advice Blackburn gave to Perelman was only personal, followed by the statement, "that's what I would do." Thus, while Perelman and Blackburn may have spoken privately, the men were not speaking within the ambit of a union relationship. They were speaking merely as coworkers. In that context there is not the "imperative need for confidence and trust" that would warrant the creation of an evidentiary privilege. *Jaffee v. Redmond*, 518 U.S. at 11.

## RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that Perelman's Supplementary Motion to Suppress Privileged Statements (#28) should be denied.

DATED this 29th day of March, 2010.

_____
**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE/**