**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:09-cr-00443-KJD-LRL |
| v. | ) | |
| | ) | MOTION TO DISMISS COUNT |
| DAVID M. PERELMAN, | ) | TWO OF THE INDICTMENT (#13) |
| | ) | |
| Defendant. | ) | |
| | ) | |

# REPORT & RECOMMENDATION

The defendant, David M. Perelman, is under indictment on one count of Theft of Government Property in violation of 18 U.S.C. § 641 and one count of Unauthorized Wearing of a Purple Heart in violation of 18 U.S.C. § 704(a) and (d). The matter before the court is Perelman's Motion to Dismiss Count Two of the Indictment (#13), in which he makes a facial constitutional challenge to the statute under which he is charged, 18 U.S.C. § 704(a). The court has considered the motion, the government's Opposition (#19) and defendant's Reply (#24). Additionally, the ACLU of Nevada filed an Amicus Brief (#14) and Reply (#26) in support of the motion to dismiss. Oral arguments were heard on March 1, 2010. Having considered the written submissions and the oral arguments of counsel, the court submits this Report and Recommendation.

## BACKGROUND

Title 18 of the United States Code, Section 704(a) provides:

> Whoever knowingly wears, purchases, attempts to purchase, solicits for purchase, mails, ships, imports, exports, produces blank certificates of receipt for, manufactures, sells, attempts to sell, advertises for sale, trades, barters, or exchanges for anything of value any decoration or medal authorized by Congress for the armed forces of the United States,

1   or any of the service medals or badges awarded to the members of such
    forces, or the ribbon, button, or rosette of any such badge, decoration or
2   medal, or any colorable imitation thereof, except when authorized under
    regulations made pursuant to law, shall be fined under this title or
3   imprisoned not more than six months, or both.

4   The defendant brings a facial challenge to § 704(a), alleging that the clause "except when

5   authorized under regulations made pursuant to law" violates the First Amendment as an unlawful prior

6   restraint on free speech, because it allows the government unfettered discretion to authorize, or to refuse

7   to authorize, someone to wear a military medal depending upon the individual's purpose for wearing

8   the medal.[1]  Such unfettered discretion, it is argued, opens the door to government imposed, viewpoint-

9   based restrictions on speech.  For example, under this statute, according to the defendant, the

10  government could permit an actor in a patriotic theatrical production to wear a medal, but deny a war

11  protester's request to wear such a medal.

12  The government contends that one is "authorized" to wear a medal if one has "earned" the

13  medal, so to speak.  In the government's view, "authorization" to wear a medal within the meaning of

14  § 704(a) does not mean that an individual to whom a medal has not been issued must somehow seek

15  governmental permission to wear one.  For example, the mother of a fallen soldier would not be

16  required to obtain governmental permission to wear her son's medal at his memorial service.  Although

17  the statute prohibits sixteen discrete acts, the parties focus only the First Amendment implications of

18  the "unauthorized" act of *wearing* a service medal.

19                          **DISCUSSION**

20  Courts generally disfavor facial challenges to legislation, in part because a finding of

21  unconstitutionality undermines and frustrates the intent of the elected representatives of the people.  *See*

22  *Wash. State Grange v. Wash. State Republican Party*, 128 S. Ct. 1184, 1191 (2008); *see also Nat'l*

23  *Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) ("Facial invalidation is, manifestly, strong

24

25  _____

    [1]  Section 704(a) refers to "any of the service medals or badges awarded to the members of such forces, or the
    ribbon, button, or rosette of any such badge, decoration or medal."  For ease of discussion, and inasmuch as the parties
26  refer to this list of items collectively as "medals," the court also will use the word "medals" to refer collectively to the
    list of regulated items.

                          2

medicine that has been employed by the Court sparingly and only as a last resort.") (internal quotations and citation omitted).   Although this reluctance is somewhat relaxed in the First Amendment context, a defendant still "must demonstrate a substantial risk that application of the provision will lead to the suppression of speech." *See Finley*, 524 U.S. at 580; *see also City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 759 (1988) (requiring showing that a challenged enactment "pose[s] a real and substantial threat of the identified censorship risks").

A scheme that requires permission from the government, or its designee, before one may engage in constitutionally-protected expression, constitutes a prior restraint. *See Freedman v. Maryland*, 380 U.S. 51, 58 (1965).  "[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective standards to guide the licensing authority, is unconstitutional." *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 150-151 (1969).  To determine whether the statute impermissibly grants "the licensing official . . . unduly broad discretion," the Ninth Circuit considers whether the language of the statute "contain[s] adequate standards to guide the official's decision and render it subject to effective judicial review," and mitigates the "risk that [the licensor] will favor or disfavor speech based on its content." *Seattle Affiliate of the October 22nd Coalition To Stop Police Brutality, Repression and the Criminalization of a Generation v. City of Seattle*, 550 F.3d 788, 798 (9th Cir. 2008) (internal quotations and citations omitted).  "[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially," even when that person has neither applied for nor been denied a license.  *City of Lakewood*, 486 U.S. at 755-56.

Content-based regulation of fully-protected speech bears "a heavy presumption against its constitutional validity."  *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975).  Thus, while a presumption of constitutional validity exists in most contexts, the reverse is true for a First Amendment challenge to a content-based restriction on fully-protected speech.  *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992) ("Content-based regulations are presumptively invalid.").  It is generally the government's burden to demonstrate that

3

1   a restriction on expression is narrowly tailored to bring about a compelling government interest.  "A

2   statute is narrowly tailored if it targets and eliminates no more than the exact source of 'evil' it seeks

3   to remedy."  *Frisby v. Schultz*, 487 U.S. 474, 485 (1988).  In *United States v. O'Brien*, however, the

4   Court in upholding a statute which prohibited the destruction of draft cards, explained that where non-

5   speech activity has incidental First Amendment effects, "a government regulation is sufficiently justified

6   if it is within the constitutional power of the Government; if it furthers an important or substantial

7   governmental interest; if the governmental interest is unrelated to the suppression of free expression;

8   and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to

9   the furtherance of that interest."  391 U.S. 367, 377 (1968).

10          Prosecutions for violations of § 704(a) in federal courts are rare;  this is the first such

11   prosecution in the District of Nevada.  As a result, scant case law has developed to illuminate the

12   meaning of § 704(a), and more specifically, what it means to say that it is a crime to wear a military

13   medal "except when authorized under regulations made pursuant to law."  No court has addressed

14   whether that phrase constitutes an unlawful prior restraint on speech.  Notably, however, the Supreme

15   Court has upheld 18 U.S.C. § 702, which, in language strikingly similar to § 704(a), provides:

16   "Whoever . . . without authority, wears the uniform or a distinctive part thereof or anything similar to

17   a distinctive part of the uniform of any of the armed forces of the United States, Public Health Service

18   or any auxiliary of such, shall be fined . . . or imprisoned not more than six months, or both," finding

19   that the statute "standing alone, [is] a valid statute on its face."  *Schacht v. United States*, 398 U.S. 58,

20   61 (1970) (citing *O'Brien*, 391 U.S. 367) (but holding a companion provision, 10 U.S.C. § 772(f),

21   which authorized actors to wear military uniforms in theatrical productions except in portrayals which

22   tended to discredit Armed Forces to be an unconstitutional restraint on an actor's right of free speech,

23   and accordingly striking a portion section 772(f) while leaving 18 U.S.C.§ 702 intact).

24          While § 702 is similar in construction to § 704(a), the Court in *Schacht* did not explain why §

25   702 was "a valid statute on its face."  Nor was the meaning of the word "authorized" at issue in that

26   opinion.  Accordingly, while *Schacht* suggests that § 704(a) may be constitutional on its face pursuant

4

to the *O'Brien* factors, the decision provides little guidance as a prior restraint challenge to the phrase "except when authorized under regulations made pursuant to law." Thus, the court must determine what that phrase means, and whether it constitutes an impermissible prior restraint on protected speech in violation of the First Amendment.

**A. The Meaning of "Authorized" in § 704(a)**

The "unauthorized wearing, manufacture, or sale of medals and badges" has been punishable by fine or imprisonment since 1923. *See* Act of February 24, 1923, ch 110. 42 Stat. 1286 (former 10 U.S.C. § 1425). The 1923 Act provided, in pertinent part:

> [T]he wearing, manufacture, or sale of [specific medals and badges] awarded by the War Department, or the ribbon, button, or rosette thereof of the form as is or may hereafter be prescribed by the Secretary of War, or any colorable imitation thereof, *is prohibited, except where authorized under such regulations as the Secretary of War may prescribe.*

*Id.* (emphasis added).

In 1928, the Seventieth Congress made some minor changes to the wording of the 1923 Act, which closely resemble the current wording of what we now know as § 704(a):

> That hereafter the wearing, manufacturing, or sale of the congressional medal of honor, distinguished-service cross, distinguished-service medal, distinguished-flying cross, soldier's medal, or any other decoration or medal, which has been, or may be, authorized by Congress for the military forces of the United States, or any of the service medals or badges which have been, or may hereafter be, awarded by the War Department, or the ribbon, button, or rosette of any of the said medals, badges, or decorations, of the form as is or may hereafter be prescribed by the Secretary of War, or of any colorable imitation thereof, *is prohibited, except when authorized under such regulations as the Secretary of War may prescribe.*

Act of April 21, 1928, ch 392, 45 Stat. 437 (former 10 U.S.C. § 1425) (emphasis added).

In 1948, 18 U.S.C. § 704 was enacted. It was based on former 10 U.S.C. § 1425, and read as follows:

> Whoever knowingly wears, manufactures, or sells any decoration or medal authorized by Congress for the Armed Forces of the United States, or any of the service medals or badges awarded by the War or Navy Departments, or the ribbon, button, or rosette of any such badge, decoration or medal, or any colorable imitation thereof, *except when*

5

*authorized under regulations made pursuant to law*, shall be fined not
more than $250 or imprisoned not more than six months, or both.

*Id.* (emphasis added).  As is apparent, § 704 was made applicable to the decorations and medals of the Navy Department as well as those of the War Department, as it was then known.  Although minor modifications to § 704 were made in 1949, 1994, 1996, and 2001, it was not until the enactment of the 2005 Stolen Valor Act ("the Act") that the statute underwent a major revision.  The Act expanded the scope of § 704.  The Act's proponent, Congressman Salazar, explained that § 704 had "allow[ed] Federal law enforcement to prosecute individuals who physically wear medals on their persons.  The problem has been occurring where individuals are claiming to have earned these medals and there is no way for authorities to be able to prosecute these individuals." 152 Cong. Rec. H8819 (daily ed. Dec. 6, 2006) (statement of Rep. Salazar).  Hence, the Act was intended to "make[] a language fix to the current Federal statute, to include making verbal and written claims to be the recipient of a military medal that they were not entitled to."  *Id.*  In other words, the Act simply broadened the scope of the entire section to penalize other acts in addition to the wearing, manufacturing or selling of medals.  In addition to prohibiting these three acts, § 704(a) was supplemented to prohibit a more comprehensive list of activities, including purchasing, mailing, importing, and advertising medals for sale, among others.  The wording regarding the wearing of medals, however, has remained virtually unaltered since 1928.[2]

The implementing regulations for § 704 are found in 32 C.F.R. § 507.  "Possession and wearing" of service medals is addressed in 32 C.F.R. § 507.12, which generally mirrors the language of § 704.  Section 507.12(a) provides that the wearing of a service medal, among other items, "prescribed or authorized by the Department of the Army and the Department of the Air Force by any person not properly authorized to wear such device, or the use of any decoration, service medal, badge, service ribbon, lapel button, or insignia to misrepresent the identification or status of the person by whom such

---

[2]  The 2006 amendment also added § 704(d), which provided an enhanced penalty for unlawfully wearing certain medals, including the Purple Heart, in violation of § 704(a).  It is now a Class A misdemeanor punishable by up to one year in prison.

6

is worn is prohibited." Section 507.12(b) provides that, "mere possession" is "authorized provided that such possession is not used to defraud or misrepresent the identification or status of the individual concerned." Section 507.12(c) corresponds to that portion of § 704 related to the "use" of medals.

One other federal court has addressed the constitutionality of § 704(a). In *United States v. McGuinn*, 2007 WL 3050502, *3 (S.D.N.Y. Oct. 18, 2007) (unpublished), the defendant challenged § 704(a) as overbroad and/or vague. There, the court "assumed, without deciding, that, as a general proposition, wearing military medals or decorations is constitutionally protected speech," and analyzed the constitutional challenges accordingly. *McGuinn*, 2007 WL 3050502 at *2. The court construed the word "authorized" to mean that the statute requires a person who wishes to wear the military medal of another to seek authorization to do so. As the court in *McGuinn* explained:

> [I]f a parent wishes to wear his or her child's military medals or decorations to honor that child at a funeral or parade, the parent must seek and obtain authorization to do so, under regulations made pursuant to law. Similarly, if a person wishes to wear military medals or decorations in a theatrical, cinematic or television production, a person must seek and obtain authorization to do so, as provided by the statute.

*Id.* at *3. This is essentially the position taken by Perelman in this case.

This court respectfully disagrees. Notably, the *McGuinn* decision does not identify a regulation that governs the procedure, if any, by which a parent, loved one, or theatrical performer, or anyone else, would be required to seek authorization to wear the medal of another. Nor is this court able to locate such a regulation. However, this court has located an extensive body of Army regulations, entitled Personnel-General Military Awards, which prescribe the parameters and procedures surrounding the authorization of medals for service personnel. Army Regulation 600-8-22.[3] For example, AR 600-8-22

---

[3] It is worth noting that at the time the Stolen Valor Act was passed these regulations prescribing policy and criteria for military awards and the administrative instructions for processing military awards were codified at 32 C.F.R. § 578.1, *et. seq.* The Department of Army petitioned to have the regulations removed from the Code of Federal Regulations in 2008, because it "determined that the rules prescribing policy and criteria for military awards and the administrative instructions for processing military awards are not required to be published in the Code of Federal Regulations (CFR) because they are not generally applicable and have no legal effect per 44 U.S.C. 1505." Decorations, Medals, Ribbons, and Similar Devices, 73 Fed. Reg. 66754 (November 12, 2008).

§ 3-8 prescribes the "authority and criteria" for the Distinguished Service Cross and is representative of other prescribing sections:

> a. The Distinguished Service Cross, section 3742, title 10, United States Code (10 USC 3742), was established by Act of Congress 9 July 1918 (amended by act of 25 July 1963).
>
> b. The Distinguished Service Cross is awarded to a person who, while serving in any capacity with the Army, distinguished himself or herself by extraordinary heroism not justifying the award of a Medal of Honor; while engaged in an action against an enemy of the United States; while engaged in military operations involving conflict with an opposing or foreign force; or while serving with friendly foreign forces engaged in an armed conflict against an opposing Armed Force in which the United States is not a belligerent party. The act or acts of heroism must have been so notable and have involved risk of life so extraordinary as to set the individual apart from their comrades.

In light of such prescribing regulations, it is this court's view that the phrase "except when authorized under regulations made pursuant to law" refers directly to these regulations and others like them which have been or will be promulgated by the Air Force or other military awarding bodies.  Accordingly, one is "authorized" to wear a medal within the meaning of § 704(a) if one has fulfilled the criteria set forth in the prescribing regulation, that is, by being recommended for and granted authority to wear it pursuant to the prescribing regulations referenced above.  In other words, one is "authorized" to wear a medal within the meaning of § 704(a) if one has *earned* it.

Such a meaning is historically consistent with General George Washington's admonition when speaking of the Military Merit Badge (predecessor of the Purple Heart) in 1782: "Should any who are not entitled to these honors have the insolence to assume the badges of them, they shall be severely punished."  152 Cong. Rec. H8819, *supra* (quoted by Rep. Salazar).  This meaning is also implied by the military in an opinion of the United States Court of Appeals for the Armed Forces in *United States v. Avila*, which this court finds instructive regarding the meaning of "unauthorized wearing."  47 M.J. 490,492 (1998) (holding that the defendant, charged with unauthorized wearing of a Bronze Star, was not prejudiced by testimony which was admitted in error, insofar as the remaining evidence on the issue of whether the accused had been awarded the medal demonstrated that "no [] records were found listing

1  appellant as a Bronze Star recipient; the only record of appellant having received a Bronze Star was the

2  certificate found among his personal effects and a duplicate copy found in his personnel file").

3  **B. Section 704(a) Does Not Restrict Speech in Violation of the First Amendment**

4       Inasmuch as § 704(a) does not vest discretion in a government official to allow or disallow the

5  wearing of medals by those who were not awarded them for their military service, *see City of Lakewood*,

6  486 U.S. at 755-56, this court finds that § 704(a) is not a licensing scheme which impermissibly gives

7  the government unfettered discretion to engage in viewpoint-based restriction of speech.   Section

8  704(a) simply does not require anyone to seek permission from the government to engage in

9  constitutionally-protected expression. *See Freedman v. Maryland*, 380 U.S. 51, 58 (1965).  Rather,

10  except for those who were duly awarded the medals, § 704(a) provides an across-the-board prohibition

11  against the wearing of military medals, irrespective of the reason why a person who did not earn a

12  particular medal might want to wear it.  Hence, there is no risk that application of § 704(a) "pose[s] a

13  real and substantial threat" of viewpoint based censorship of speech. *See City of Lakewood,* 486 U.S.

14  at 759.

15       Defendant nevertheless argues that "[w]hile the text of the statute at issue here does not

16  explicitly prohibit expressive conduct that would negatively affect the reputation of the armed forces,

17  Congress's findings in adopting the 2005 amendments to § 704 clearly shows this is precisely the sort

18  of speech the government seeks to restrain," a purpose which is unconstitutional under *Schacht.*  Mot.

19  (#13) at 7.  Whether this is so or not, the 2005 amendments did not add that portion of the statute which

20  is challenged here.  The language defendant challenges preceded the 2005 amendments and has

21  remained virtually unaltered since 1928. As explained above, the challenged portion of the statute, *viz.*,

22  "except when authorized under regulations made pursuant to law," refers to the authorization gained

23  by the recommendation for and ultimate grant of authority to wear a medal pursuant to regulations such

24  as those produced by the Army, and not permission for the public to wear a medal in a play as defendant

25  argues.

26       Importantly, the regulations setting forth the criteria for authorization to wear particular medals

9

neither directly regulate speech nor are they intended to regulate speech. Rather the express purpose of the medals program is "to foster mission accomplishment by recognizing excellence of both military and civilian members of the force and motivating them to high levels of performance and service." AR 600-8-22 §1-1. The decision to authorize one to wear a specific medal is not based on any expressive intent or desire of the would be wearer. Indeed, pursuant to the regulations, one cannot even recommend oneself for a medal. AR 600-8-22 § 3-4 ("The Army does not condone self-recognition; therefore, a Soldier may not recommend himself/herself for award of a decoration."). Rather, both the decision to recommend and the final grant of authority to wear are based on third party observation of the acts of the individual in performing his or her duty, combined with such objective elements as whether he or she was "engaged in an armed conflict against an opposing Armed Force in which the United States is not a belligerent party," and/or whether said conflict was opposing a foreign force, against an "enemy of the United States." *See* AR 600-22-8 § 3-8(b) (prescribing authority and criteria for Distinguished Service Cross).[4] Section 1-16 of AR 600-8-22 provides the mechanism for appeal of a disapproved or downgraded award recommendation. "Revocation of personal decorations and suspension of authority to wear," is prescribed by AR 600-8-22 § 1-31.

Thus, insofar as § 704(a) does not, itself, regulate speech but could have an incidental effect on speech, the court agrees with the government that *United States v. O'Brien* provides the appropriate measure for review. Application of *O'Brien* is also consistent with the decision in *Schacht*. *See Schacht*, 398 U.S. at 61 (citing *O'Brien*, 391 U.S. 367 to find 18 U.S.C. § 702, which is similar in construction to § 704(a), "standing alone, [is] a valid statute on its face."). Under *O'Brie*n, "a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment

---

[4] Interestingly, the Purple Heart – the alleged unauthorized wearing of which is the underlying factual basis for defendant's indictment under § 704(a) – "differs from all other decorations in that an individual is not 'recommended' for the decoration; rather he or she is entitled to it upon meeting specific criteria." AR 600-8-22 § 1-14(c) (criteria for timeliness of award); *Id.* at § 2-8(c) (criteria for Purple Heart).

freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. at 377.

As stated in the findings of the Act, the purpose of § 704 is to "protect the reputation and meaning of military medals and decorations," Stolen Valor Act of 2005, Pub. L. No. 109-437, § 1998, 120 Stat. 3226 (2006) at § 2, and it applies to those medals "authorized by Congress for the armed forces of the United States." 18 U.S.C. § 704(a). As explained above, the purpose of the medals program, itself, is "to foster mission accomplishment by recognizing excellence of both military and civilian members of the force and motivating them to high levels of performance and service." AR 600-8-22 §1-1. Such a purpose is within the constitutional power of the government, insofar as "the Constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping." *O'Brien*, 391 at 377. The government's interest in motivating military personnel to high levels of performance is clearly important and substantial. Such an interest is also, as the government notes, " wholly unrelated to the suppression of speech." Opp'n (#19) at 7.

Finally, as to whether "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest," the government's argument that "it would simply be impossible to prevent or avoid the proliferation of false medals, certificates, and claims concerning service without section 704(a)" is well taken. To allow the unrestricted wearing of medals by those not authorized to do so would be to undermine the purpose of the medals program and the statute designed to protect that purpose. Anything less than an across the board prohibition as presented by § 704(a), however, would introduce the very specter that defendant argues so ardently against: a system allowing some, but not all, to wear the medals at the discretion of the government.[5]

---

[5] The court notes that the statute does not prevent the wearing of an imitation medal, so long as it is not a "colorable imitation." While the court is not asked to address the issue of what would be an impermissible "colorable imitation," the court in its research has observed that the medals and badges at issue here are produced to strict standards and guidelines, including among others: specification of color, i.e., "Ultramarine Blue 67118," " Old Glory Red 67156," or "White 67101"; precise width of a color stripe, i.e., "3/64" or "7/32"inch; and often, a specific design or text set in a specific pattern and script on the back of a medal, i.e., "For Gallantry in Action" on the Silver Star or "FOR MILITARY MERIT" below the coat of arms and leaves on Purple Heart. *See* The Institute of Heraldry, Decorations and Awards, http://www.tioh.hqda.pentagon.mil/Awards/decorations.aspx (providing pictures, criteria, specifications, and history of individual medals and decorations). Accordingly, it appears entirely possible to wear an imitation medal, which expresses the message of a decorated veteran, without violating the statute's prohibition of wearing an actual medal or

Accordingly, the court finds that 18 U.S.C. § 704(a) is constitutional on its face.  *Accord Schacht*, 398 U.S. at 61.

**RECOMMENDATION**

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that Perelman's Motion to Dismiss Count Two of the Indictment (#13) should be denied.

DATED this 1st day of June, 2010.

_____
**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**

colorable imitation thereof.